FIEGEL et al. v. FIRST NAT. BANK OF KINGFISHER.

No. 10372—Opinion Filed Feb. 20, 1923.

Rehearing Denied April 17, 1923.

Second Rehearing Denied May 22, 1923.

(Syllabus.)

1. Pleading—Sufficiency on Demurrer.

Where a pleading states any facts entitling the pleader to any relief, a general demurrer will not be sustained.

2. Chattel Mortgages — Unfiled Mortgage —Actual Notice — Attaching Creditor — Priorities—Statutory Construction.

A chattel mortgage executed in good faith for a valuable consideration, which has not been filed as required by section 4031, Rev. Laws 1910, is valid between the parties, and the lien created by such mortgage is superior to that of an attaching creditor with actual notice of such mortgage where such creditor had notice of such mortgage prior to attaching the mortgaged property.

3. Trial—Opening Statement—Demurrer—Judgment.

It is error to require a party over his objections to submit his action to the court upon the statement of his attorney, where the issues have not been made by the pleadings and at a time when the cause has not been set for trial, and enter judgment against such party upon the statement of counsel, where the petition of such party states a cause of action.

4. Attachment—Growing Crop—Validity of Levy.

In order to make a valid levy of attachment upon a growing crop. the officer executing the order must go upon the premises where such crop is and cause it to be appraised and notify the owner or person in possession of the crop of making the levy, and assume control over it by placing someone in control of such crop.

Error from District Court, Kingfisher County; J. C. Robberts, Judge.

Action by First National Bank of Kingfisher against W. M. Hamil to recover upon promissory notes. Order of attachment issued and levied upon a growing wheat crop. Victor Fiegel, intervener. Judgment for plaintiff for amount sued for and attachment sustained. Defendant and intervener bring error. Affirmed as to defendant; reversed as to intervener.

D. K. Cunningham, for plaintiffs in error.

E. D. Brownlee and Boynton & Reilly, for defendant in error.

KENNAMER, J. Victor J. Fiegel and W. M. Hamil prosecute this appeal to reverse this judgment in favor of the First National Bank of Kingfisher entered on the 12th day of June, 1918, in an action instituted on the 4th day of February, 1918 by the First National Bank against W. M. Hamil to recover upon certain promissory notes executed by Hamil to the bank

The material facts necessary to be considered in determining the questions presented by this appeal, briefly stated, in substance, are as follows: On February 14, 1918, the date on which the bank instituted the action against Hamil, it caused a writ of attachment to be issued. On the same date the sheriff attempted to levy upon an undivided one-half interest of a growing wheat crop on the northwest quarter of section 4-17-8, Cooper Tp. It appears from the return of the sheriff on the order of attachment that he took possession of the wheat crop and caused it to be appraised, and that this is all he did towards making the levy.

Thereafter, on April 27, 1918, by permission of the court, Victor J. Fiegel filed a plea of intervention in the action, asserting a lien upon the wheat crop by virtue of a chattel mortgage executed to him by W. M. Hamil on December 15, 1917, to secure the payment of a promissory note of the same date. The mortgage was not filed for record until the 16th day of February, 1918, two days subsequent to the levying of the attachment. The plea of the intervener alleged that the note had never been paid, and that the plaintiff, on the date the sheriff attempted to attach the wheat crop, had actual notice of the existence of the mortgage of Fiegel, and that the sheriff at the time of making the levy of attachment had actual knowledge and notice of the note and mortgage. That the sheriff, on the 14th day of February, 1918, after making the levy and causing the crop to be appraised, abandoned the same and left it unprotected without posting any notice that he had taken possession thereof or placing anyone in charge of the wheat crop. Copies of the intervener's note and mortgage were attached to his petition as exhibits.

It appears from the record that after the plea of intervention was filed, D. K. Cunningham, attorney for said intervener, obtained permission to carry the petition to his office for the purpose of making a copy to file for the attorney for the plaintiff, as required by the rules of the court, and that the court took a recess until the 12th day of June, 1918, when the court reconvened without a jury for purpose of disposing of nonjury cases and hearing motions and demurrers and entering judgments of default. On this date, without any notice having been given to the intervener or his attorney, counsel for plaintiff demanded judgment against the defendant, Hamil, which was granted over the objections of Cunningham, attorney for Hamil. Counsel for the plaintiff objected to Mr. Cunningham appearing for the intervener, Mr. Fiegel, for the reason he had taken the petition of the intervener from the files and had not returned it. Thereupon, counsel for plaintiff made the statement that if counsel for the intervener would make a statement to the court of what the attorney for the intervener expected to prove on the trial of said cause, counsel for plaintiff might agree to have the rights of said intervener determined on said statement.

Mr. Cunningham, attorney for the intervener, made a statement to the court as to what the intervener expected to prove on hearing of the action in support of his claim to the property attached by the sheriff. The statement, in substance, was about the same as the allegation of his petition, except no statement was made with reference to the plaintiff and the sheriff having actual notice of the intervener's note and mortgage. But counsel for intervener did state that the sheriff, after making the levy, left no one in charge of the wheat crop. After counsel for the intervener had finished the statement, counsel for the plaintiff demurred to the statement on the ground that the intervener had no claim under his chattel mortgage which could be prior to the levying of the attachment, because said chattel mortgage was unfiled at the time of the levying of the attachment on the wheat. The demurrer was by the court sustained, and judgment entered in favor of the plaintiff against Hamil, the defendant, and the attachment sustained.

The sustaining of the demurrer to the statement of the claim of the intervener is assigned as error. We are clearly of the opinion that the judgment of the trial court in sustaining the demurrer and decreeing the intervener had no valid lien on the property involved in the action as against the lien of the bank created by the levying of the attachment was error. It appears from the record that this case had never by the court been set for trial after the intervener filed his petition asserting a lien upon the attached property; that no answer had been filed by the plaintiff to the petition of the intervener, and issues thereon had not been joined. Section 4989, Rev. Laws 1910, provides that "issues arise on the pleadings." Issues are of two kinds: of law and of fact. Section 4990 provides:

"An issue of law arises upon a demurrer to the petition, answer or reply, or to some part thereof."

Section 4991 provides:

"An issue of fact arises: First, upon a material allegation in the petition, controverted by the answer; or, second, upon new matter in the answer, controverted by the reply; or, third, upon new matter in the reply, which shall be considered as controverted without further pleading."

We have examined the petition filed by the intervener in this case, and it stated facts sufficient to entitle the intervener to relief against the plaintiff. In the case of Bishop-Babcock-Becker Co. v. Estes Drug Co. et al., 63 Okla. 117, 163 Pac. 276, it was held:

"Where a pleading states any facts upon which the pleader is entitled to any relief under the law, a general demurrer should not be sustained thereto."

If the allegations of the petition are true the intervener has a valid chattel mortgage upon the property attached by the plaintiff, and which is a superior lien to that of the attachment, if it be conceded that any lien was created and retained by the attempted attachment. A chattel morgage is good between the parties without the filing of it as required by section 4031, Rev. Laws 1910. Gibson v. Linthicum, 50 Okla. 181, 150 Pac. 908. And it is good as against all subsequent parties seeking to estabish a lien against the property with actual notice of the existence of such mortgage. This rule was in principle announced by this court in the case of Blevins et al. v. W. A. Graham Co., 72 Oklahoma, 182 Pac. 247. Mr. Justice Johnson, in delivering the opinion of the court in construing section 4031, supra, said:

"Nor was it intended that one rule should apply in organized counties and the opposite rule in unorganized counties, nor one rule as to the real estate mortgages, and its opposite as to chattel mortgages The purpose of the statute was to give constructive notice to those whose dealings were in good faith, and who had no actual knowledge of the facts. The words 'purchasers and incumbrancers for value' in the first portion of section 4031 are used in the same sense as the words 'purchasers or incumbrancers of the property in good faith for value' in the remainder of the section. Van Rensselaer v. Clark, 17 Wend. (N. Y.) 25, 31 Am. Dec. 280; Gibson v. Linthicum, 50 Okla. 181, 150 Pac. 908; Merchants' Nat. Bank v. Frazier, 60 Okla. 156, 159 Pac. 647; Stockyards Loan Co. v. Nichols et al., 156 C. C. A. 209, 243 Fed. 511, 1 A. L. R. 547."

Counsel for the plaintiff insist that the rule announced in the case, supra, is inapplicable, for the reason the words "good faith" only apply to purchasers, and not creditors, as the statute had been construed by the court prior to the revision of the Code in 1910. We fail to conceive of any good reason for placing a creditor in a different position from a purchaser, in attempting to create a lien on the mortgagor's property by levying an attachment, if he has actual knowledge of the existence of an unrecorded mortgage that is valid between the parties. Where such a mortgage is free from fraud and was taken by the mortgagee in good faith to secure a just debt created by the mortgagee parting with a valuable consideration, it appears there can be no good reason for any distinction between such a lien, where actual notice exists, and one based only upon constructive notice such as is imparted by recording it. It was held in the case of Fenby v. Hunt (Wash.) 101 Pac. 492, that "actual notice is of a higher character than constructive notice." The only purpose of recording an instrument is to impart notice to others that the parties to the contract. The rule is adhered to in Iowa, Kentucky, Maryland, Minnesota, and New Hampshire that creditors are in the same position as subsequent purchasers and are held to be postponed to an unrecorded mortgage of which they had actual knowledge. See 11 C. J., p. 522, sec. 198, and cases therein cited.

Counsel for the plaintiff argues that this court has no jurisdiction to review the action of the court in sustaining the demurrer and rendering judgment, for the reason no motion for new trial was filed. With this contention of counsel we cannot agree. Counsel appears to assume there was a trial. We do not believe the record will bear out this conclusion. It appears counsel for the intervener objected to proceeding with the trial of the cause, and it is clear that the court had not convened for the purpose of trying cases, but for the purpose of disposing of motions, demurrers, and entering default judgments. But counsel for the plaintiff insisted on counsel for the intervener making a statement of what he expected to prove in the case and that counsel might agree to submit the case on his statement. It is clear to us that the statement made by counsel for the intervener could only be treated as supplementing his petition, which was not before the court, and which we hold stated a cause of action. We know of no statute authorizing a demurrer to be interposed to such a statement of counsel as was made in this case. The record of the proceedings presents rather a novel course of procedure. On account of having left the petition in his office, which he had taken there by permission of the court, counsel for the intervener seems to have been forced to try his case upon the best statement he could make of the same without the aid of the petition. The case did not stand for trial, and it is our opinion it was not proceeded with in the orderly manner contemplated by the applicable statutes. There are many authorities which support the rule that when a case is called for trial and an opening statement is made to the court or jury by counsel for the plaintiff of the case which he expects to establish, and according to the admitted facts, as stated, no recovery may be had, it is within the power of the court to render judgment. Hornblower et al. v. George Washington University, 31 App. Cas. (D. C.) 64, A. & E. Ann. Cas. vol. 14, 696, and note. But this cannot be permitted unless it clearly appears no recovery may be had

after giving counsel an opportunity to fully explain the facts and when the statement is full, exact, and explicit. Usually such a situation arises when the statement shows the action to be barred, or the claim is unenforceable because it is against public policy. Mere insufficiency of the statement of counsel will not justify the court in directing a verdict. Martin Emerich Outfitting Co. v. Seigle, 108 Ill. App. 364. In the case of Leonard v. Beaudry, 68 Mich. 323, 36 N. W. 88, it was held:

"It is not good practice to decide a case upon the opening statement of counsel, and the cases are exceptional where it can be safely done."

In the case of Sullivan v. Williamson et al., 21 Okla. 844, 98 Pac. 1001, the court held:

"Where the petition states a cause of action, it is error to sustain a motion to dismiss the cause and render judgment against the plaintiff upon the opening statement of his counsel." See Mascho et al. v. Johnson, 49 Okla. 646, 153 Pac. 630; Patterson et al. v. Morgan, 53 Okla. 95, 155 Pac. 694; Mackey v. Boswell et al., 63 Okla 20, 162 Pac. 193; King v. Lane, 66 Okla. 304, 169 Pac. 901.

If counsel in the case at bar desired to present to the court the action of counsel for the intervener in not filing a copy of the petition as required by rules of the court, he should have made a motion to require counsel to return the petition and file copy. But this technical violation of the rule of the court did not authorize the court to require the intervener to proceed with the case in the manner herein set out.

As this cause must be reversed for a trial, we deem it advisable to consider next the question presented as to the sufficiency of the levy made under the order of attachment. Sections 4815 to 4820, inclusive, Rev. Laws 1910, provide the procedure for issuing and serving a writ of attachment. These sections read:

4815. "The order of attachment shall be directed and delivered to the sheriff. It shall require him to attach the lands, tenements, goods, chattels, stocks, rights, credits, moneys and effects of the defendant in his county, not exempt by law from being applied to the payment of the plaintiff's claim, or so much thereof as will satisfy the plaintiff's claim, to be stated in the order as in the affidavit, and the probable cost of the action not exceeding fifty dollars."

4816. "Orders of attachment may be issued to the sheriffs of different counties, and several of them may, at the option of the plaintiff, be issued at the same time, or in succession; but only such as have been

executed shall be taxed in the costs, unless otherwise directed by the court."

4817. "The return day of the order of attachment, when issued at the commencement of the action, shall be the same as that of the summons. When issued afterwards, it shall be twenty days after it is issued."

4818. "Where there are several orders of attachment against the same defendant, they shall be executed in the order in which they are received by the sheriff."

4819. "The order of attachment shall be executed by the sheriff, without delay. He shall go to the place where the defendant's property may be found and declare that, by virtue of said order, he attaches said property at the suit of the plaintiff; and the officer, with two householders, who shall be first sworn or affirmed by the officer, shall make a true inventory and appraisement of all the property attached, which shall be signed by the officer and householders, and returned with the order."

4820. "When the property attached is real property, the officer shall leave with the occupant thereof, or, if there be no occupant, in a conspicuous place thereon, a copy of the order. Where it is personal property, and he can get possession, he shall take the same into his custody, and hold it subject to the order of the court."

The petition of the intervener raises two questions as to the sufficiency of the attachment as made. He first questions the effective service of the order. We are clear from the return that no valid levy was made. While the statutes do not specifically provide that the writ must be served on the defendant, it is clear to us it must be done the same as the summons in the action or on the person in possession of the property. The officer is commanded by section 4819, if the writ is levied upon personal property, to execute the writ, and by section 4820, if the writ is levied upon personal property he is commanded to take it into custody and hold it subject to the order of the court. It is plain no officer would have any authority to take possession of property and take it out of the custody of the owner or person in the rightful possession thereof without notifying such person on what authority he was acting, and it is plain the statute providing for the execution of the writ contemplates that to properly execute means to make the levy on the property and serve the order on the defendant or the person in possession. The return day of the order, if issued at the commencement of the action, shall be the same as that of the summons. Section 4821 provides for the person in possession making a redelivery bond, which shows that it is contemplated that such per-

son shall be entitled to notice of the execution of the order.

Personal property is presumed to be in the possession of the rightful owner or his authorized agent. In making a valid levy of an order of attachment, the weight of authority appears to support the rule that the officer executing the order must take only such possession of the property as he may be able to, according to the nature of the property levied upon, but it is essential that the officer assumes control and dominion over it. Parish v. Van Arsdale-Osborne Brokerage Co. et al., 92 Kan. 286, 140 Pac. 835, Ann. Cas. 1916B, 981, and note.

In Throop v. Maiden, 52 Kan. 258, 34 Pac. 801, the court held:

"To make and maintain an attachment levy upon personal property, the officer must take such possession as the nature of the property will permit; and an attempted levy by an officer who does not by himself or another for him, take and retain actual and exclusive control of the property, is invalid.

"In the month of October, an officer attempted to levy an order of attachment on 40 acres of standing corn, which had ceased to grow, but was not sufficiently dry to crib, and cause the same to be appraised. He notified the attachment debtor of the levy, but did not authorize such debtor to hold possession of the corn for him, nor place it in the charge of any one else. Neither did he post any notice that he claimed possession under the attempted levy. No control or dominion over the property was exercised by the officer until winter, a period of about two months, when he returned, and posted notice of proposed sale of the corn. During that time, two-fifths of the corn had been gathered and used by the attachment debtor, whose possession had never, in fact, been disturbed, but who had been told by the officer that he was at liberty to take sufficient corn from the field to feed his stock. Held, that the attempted levy is void against one to whom the property was mortgaged, and whose mortgage was filed for record four days after the attempted levy."

In the case of Crisman v. Dorsey, 12 Colo. 567, 21 Pac. 920, 4 L. R. A. 464, where it appeared the officer went to a farm to levy on stacks of wheat, but did not exercise dominion over the property by forbidding the defendants from interfering with the property, the court said:

"There was nothing to indicate that the property had passed from the possession of its owners. The levy was merely formal—a 'pen and ink' levy."

So we hold that, in order to make a valid levy of an order of attachment upon a growing crop, the officer executing the writ must go upon the premises where the crop is and cause it to be appraised and notify the owner, or person in possession, of the levy, assume control over it, and place someone in custody of such crop.

The return of the sheriff in the instant case fails to show that any one was notified of the attempted levy except the parties summoned to appraise the crop. The return fails to show that any kind of notice was given to the defendant, the owner of the crop, of an attachment being made. We hold, in order to constitute a taking of possession and control of a growing crop, that the defendant, or person in possession of the crop, must be notified of the action of the officer in executing the order, and that without such notice the defendant, or person in possession of the crop, would have no official notice and would not legally know that his possession had been interfered with.

Counsel for Hamil, the defendant in this action, make some complaint of the action of the court in rendering judgment against said defendant, but as no contention is made that defendant has any defense to the action, the judgment against him will be affirmed.

For the reasons given, the judgment as to Hamil is affirmed; but as to Fiegel it is reversed, and the cause remanded to the district court of Kingfisher county, with directions to proceed consistently with the views herein expressed.

JOHNSON, V. C. J., and NICHOLSON, COCHRAN, and BRANSON, JJ., concur.